1   RICHARD T. MULLOY (Bar No. 199278)
    richard.mulloy@dlapiper.com
2   EDWARD H. SIKORSKI (Bar No. 208576)
    ed.sikorski@dlapiper.com
3   **DLA PIPER LLP (US)**
    401 B Street, Suite 1700
4   San Diego, California  92101-4297
    Telephone:  619.699.2700
5   Facsimile:  619.699.2701

6   AMY H. WALTERS (Bar No. 286022)
    amy.walters@dlapiper.com
7   **DLA PIPER LLP (US)**
    2000 University Avenue
8   East Palo Alto, CA  94303-2215
    Tel:  650.833.2000
9   Fax:  650.833.2001

10  Attorneys for Defendant
    NIKE, INC.
11
    **Additional Counsel Listed on Signature Pages**
12

13              UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA,

15                  OAKLAND DIVISION

16

17  CELLSPIN SOFT, INC.,                  CASE NO.  17-cv-05931-YGR

18              Plaintiff,                **DEFENDANTS' NOTICE OF MOTION
                                          AND MOTION TO DISMISS PLAINTIFF
19  v.                                    CELLSPIN SOFT, INC.'S COMPLAINTS**

20  NIKE, INC.,                           Date:    March 6, 2018
                                          Time:    2:00 p.m.
21              Defendant.                Dept.:   Courtroom 1, 4th Floor
                                          Judge:  Hon. Yvonne Gonzalez Rogers
22
                                          CASE NO. 17-cv-05928-YGR
23  CELLSPIN SOFT, INC.

24              Plaintiff,

25  v.

26  FITBIT, INC.,

27              Defendant.

28

| | |
|---|---|
| CELLSPIN SOFT, INC. | CASE NO.  17-cv-05929-YGR |
|              Plaintiff, | |
| v. | |
| MOOV, INC. | |
|              Defendant. | |
| CELLSPIN SOFT, INC., | CASE NO. 17-cv-05933-YGR |
|              Plaintiff, | |
| v. | |
| FOSSIL GROUP, INC., | |
|              Defendant. | |
| CELLSPIN SOFT, INC. | CASE NO. 17-cv-05937-YGR |
|              Plaintiff, | |
| v. | |
| TOMTOM, INC., et al., | |
|              Defendant. | |
| CELLSPIN SOFT, INC., | CASE NO. 17-cv-05939-YGR |
|              Plaintiff, | |
| v. | |
| GOPRO, INC., | |
|              Defendant. | |

| | | |
|---|---|---|
| 1 | CELLSPIN SOFT, INC., | CASE NO. 17-cv-5941-YGR |
| 2 | Plaintiff, | |
| 3 | v. | |
| 4 | PANASONIC CORPORATION OF | |
| 5 | NORTH AMERICA, | |
| 6 | Defendant. | |
| 7 | CELLSPIN SOFT, INC., | CASE NO. 17-cv-5938-YGR |
| 8 | Plaintiff, | |
| 9 | v. | |
| 10 | CANON U.S.A., INC., | |
| 11 | Defendant. | |
| 12 | | |
| 13 | CELLSPIN SOFT, INC. | CASE NO. 17-cv-06881-YGR |
| 14 | Plaintiff, | |
| 15 | v. | |
| 16 | JK IMAGING LTD., | |
| 17 | Defendant. | |
| 18 | | |

DLA PIPER LLP (US)
SAN DIEGO

WEST\280006662.3

DEFENDANTS' MOTION TO DISMISS
17-CV-05931-YGR

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3
NOTICE OF MOTION AND MOTION ............................................................................... 1

4
STATEMENT OF THE ISSUSES TO BE DECIDED ..................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

5
I.      INTRODUCTION AND SUMMARY OF ARGUMENT. .................................. 2

6
II.     THE ASSERTED CELLSPIN PATENTS. .......................................................... 3

7
III.    RELEVANT LEGAL STANDARDS..................................................................... 7

8
        A.      Whether A Patent Is Directed To Patentable Subject Matter Can Be
                Decided On A Motion To Dismiss............................................................ 7

9
        B.      Abstract Ideas Are Not Patentable Under 35 U.S.C. § 101. ................... 8

10
IV.     THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 101...... 11

        A.      Alice Step One: The Asserted Patents Claim the Abstract Idea of Acquiring
                and Transferring Data For Publication. ................................................. 12

11
        B.      Alice Step Two: There is No Inventive Concept That Transforms The
                Claimed Abstract Ideas Into Patent-Eligible Subject Matter. .............. 15

12
V.      CONCLUSION. ................................................................................................... 19

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF AUTHORITIES</u>**

2

<u>Page</u>

3

CASES

4

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
5
    838 F.3d 1253 (Fed. Cir. 2016)..................................................................10, 11, 15, 16

6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ...................................................................................... passim

7

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
8
    841 F.3d 1288 (Fed. Cir. 2016)...........................................................................17

9

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
    133 S. Ct. 2107 (2013) ..........................................................................................8
10

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.,*
11
    No. 2016-1913, --- F. App'x ----, 2017 WL 3188451 (Fed. Cir. July 27, 2017) .....................11

12

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada,*
13
    687 F.3d 1266 (Fed. Cir. 2012)..............................................................................8

14

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016)....................................................................10, 16, 19
15

*Bell Atl. Corp. v. Twombly,*
16
    550 U.S. 544 (2007)..............................................................................................7

17

*Bilski v. Kappos,*
    561 U.S. 593 (2010)............................................................................................11
18

*BSG Tech LLC v. AutoZone, Inc.,*
19
    No. 2:16-CV-529, 2017 WL 2609066 (E.D. Tex. Mar. 30, 2017) ...........................14

20

*buySAFE, Inc. v. Google, Inc.,*
21
    765 F.3d 1350 (Fed. Cir. 2014)............................................................................16

22

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
    859 F.3d 1352 (Fed. Cir. 2017)..............................................................................8
23

*Content Aggregation Solutions LLC v. Blu Prods., Inc.,*
24
    No. 16-cv-527, 2016 WL 6995490 (S.D. Cal. Nov. 29, 2016)................................16

25

*Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n,*
26
    776 F.3d 1343 (Fed. Cir. 2014)....................................................................10, 11, 14

27

*EasyWeb Innovations, LLC v. Twitter, Inc.,*
28
    689 F. App'x 969 (Fed. Cir. 2017) ......................................................................13

DLA PIPER LLP (US)
SAN DIEGO

WEST\280006662.3

DEFENDANTS' MOTION TO DISMISS
17-CV-05931-YGR

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Electric Power Group LLC v. Alston S.A.*,
4
    830 F.3d 1350 (Fed. Cir. 2016)..................................................................9, 12, 13, 16

5

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)..................................................................9, 14, 15

6

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
7
    839 F.3d 1089 (Fed. Cir. 2016)..................................................................10, 14

8

*Genetic Techs. Ltd. v. Merial LLC*,
    818 F.3d 1369 (Fed. Cir. 2016)..................................................................8

9

*In re: Bill of Lading Transmission & Processing Sys. Patent Litig.*,
10
    No. 1:09-MD-2050, 2016 WL 4505767 (S.D. Ohio Aug. 29, 2016)......................................19

11

*In re Gilead Scis. Sec. Litig.*,
12
    536 F.3d 1049 (9th Cir. 2008)..................................................................8

13

*In re TLI Commc'ns*,
    823 F.3d 607 (Fed. Cir. 2016).................................................................. passim
14

15

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)..................................................................11, 15, 18

16

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
17
    850 F.3d 1332 (Fed. Cir. 2017)..................................................................13

18

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)..................................................................18
19

*Internet Patents Corp. v. Active Network, Inc.*,
20
    790 F.3d 1343 (Fed. Cir. 2015)..................................................................9

21

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
22
    132 S. Ct. 1289 (2012)..................................................................8, 10

23

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)..................................................................9, 14

24

*MySpace, Inc. v. GraphOn Corp.*,
25
    672 F.3d 1250 (Fed. Cir. 2012)..................................................................18

26

*OIP Techs., Inc. v. Amazon.com, Inc.*,
27
    788 F.3d 1359 (Fed. Cir. 2015)..................................................................14, 18

28

DLA PIPER LLP (US)
SAN DIEGO

WEST\280006662.3

DEFENDANTS' MOTION TO DISMISS
17-CV-05931-YGR

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*OpenTV, Inc. v. Apple Inc.*,
   No. 5:15-cv-02008, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016)........................................8, 17

4

5

*Purepredictive, Inc. v. H20.AI, Inc.*,
   No. 17-cv-03049, 2017 WL 3721480 (N.D. Cal. Aug. 29, 2017) ...............................................8

6

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)..................................................................................................10

7

*SkillSurvey, Inc. v. Checkster LLC*,
   178 F. Supp. 3d 247 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017).....................19

8

9

*Smart Sys. Innovations, LLC v. Chicago Transit Authority*,
   873 F.3d 1364 (Fed. Cir. 2017)................................................................................................10

10

*Smart Sys Innovations, LLC v. Chicago Transit Authority.*,
   No. 14-cv 08053, 2015 WL 4184486 (N.D. Ill. July 10, 2015)................................................19

11

12

*Synopsis, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016).................................................................................................18

13

14

*TS Patents LLC v. Yahoo! Inc.*,
   No. 17-cv-01721, 2017 WL 3838477 (N.D. Cal. Sept. 1, 2017) ......................................8, 9, 11

15

16

*Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017).................................................................................................10

17

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014)...................................................................................................18

18

19

*University of Florida Research Foundation, Inc. v. General Electric Co.*,
   No. 1:17-cv-171, 2017 WL 5502940 (N.D. Fla. Nov. 16, 2017)..............................................13

20

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987)......................................................................................................7

21

22

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017).................................................................................................14

23

24

*W. View Research, LLC v. Audi AG*,
   685 F. App'x 923 (Fed. Cir. 2017) ...........................................................................................13

25

26

**STATUTES**

27

35 U.S.C. § 101 ...................................................................................................................... passim

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 7, 8

DLA PIPER LLP (US)
SAN DIEGO

WEST\280006662.3

DEFENDANTS' MOTION TO DISMISS
17-CV-05931-YGR

1

## NOTICE OF MOTION AND MOTION

2 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3       NOTICE IS HEREBY GIVEN that on March 6, 2018, at 2:00 p.m., or as soon thereafter

4 as counsel may be heard by the above-titled Court, located at 1301 Clay Street, Oakland, CA

5 94612, defendants NIKE, Inc. ("Nike"), Fitbit, Inc. ("Fitbit"), Moov, Inc. d/b/a Moov Fitness Inc.

6 ("Moov"), Fossil Group, Inc. ("Fossil"), Misfit Inc. ("Misfit"), TomTom, Inc. ("TomTom"),

7 GoPro, Inc. ("GoPro"), Canon U.S.A., Inc. ("Canon"), Panasonic Corporation of North America

8 ("Panasonic"), and JK Imaging Ltd. ("JK Imaging") (collectively, "Defendants") will and hereby

9 do move the Court to dismiss the Complaints filed by plaintiff Cellspin Soft, Inc. ("Cellspin")

10 pursuant to Fed. R. Civ. P. 12(b)(6).

11       Defendants respectfully request that Cellspin's Complaints be dismissed with prejudice

12 under Fed. R. Civ. P. 12(b)(6) because the claims of U.S. Patent No. 8,738,794, U.S. Patent No.

13 8,892,752, U.S. Patent No. 9,749,847, and U.S. Patent No. 9,258,698 (collectively, the "Asserted

14 Patents"), are invalid under 35 U.S.C. § 101 as they are directed to subject matter that is not

15 patentable.  Defendants' motion is made pursuant to the Court's December 22, 2017 Order in

16 these related cases, and is based on this Notice of Motion, the Memorandum of Points and

17 Authorities in support thereof, the Declaration of Richard T. Mulloy and exhibits attached thereto,

18 any supplemental briefing filed by individual defendants, the pleadings and papers on file, and

19 any evidence and argument presented to the Court at the hearing.

20

## STATEMENT OF THE ISSUES TO BE DECIDED

21       Whether Cellspin's Complaints fail to state a claim upon which relief can be granted

22 because the claims of each of the Asserted Patents are invalid under 35 U.S.C. § 101 as directed

23 to ineligible subject matter.

24 /////

25 /////

26 /////

27 /////

28 /////

DLA PIPER LLP (US)
SAN DIEGO

-1-

WEST\280006662.3

DEFENDANTS' MOTION TO DISMISS
17-CV-05931-YGR

1       **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.**  **INTRODUCTION AND SUMMARY OF ARGUMENT.**

3    Plaintiff Cellspin Soft Inc. ("Cellspin") has asserted one or more of four patents against

4 the various Defendants.  Although there are minor differences among the claims of the Asserted

5 Patents, the patent claims are generally directed to collecting data using a "data capture device" or

6 "digital camera," transferring the data over a Bluetooth or other wireless connection to a mobile

7 device (e.g., a cell phone), and then publishing that data to one or more websites.  However,

8 generic methods of acquiring, transferring and publishing data, such as those in the Asserted

9 Patents, are abstract ideas that are not eligible for patent protection under Section 101 of the

10 Patent Act.  Indeed, the sole advance claimed in the Asserted Patents is disclosed as simply

11 *automating* the process of uploading data to a website:

12     The user would then manually upload the image onto a website
       which takes time and may be inconvenient for the user.  Therefore,

13     there is a need for . . . publishing the data and multimedia content
       on one or more websites *automatically* or with minimal user

14     intervention.

15 '794 patent, Background, at 1:45-54 (emphasis added).  However, the law is clear that using

16 generic computing technology to automate a conventional process and save time or increase

17 efficiencies is not an inventive step that can confer patentability.

18    Moreover, none of the claims recite any non-conventional hardware or software to

19 implement the purported invention.  Instead, the claims recite generic computer terminology and

20 the specification confirms that the purported inventions use "technologies that are pervasive [and]

21 flexible" through devices such as a "ubiquitous mobile phone," "fairly widespread" personal

22 digital assistants (PDAs), and "general purpose computers and computing devices."  '794 patent

23 at 9:37-48; 10:10-13.  Cellspin's patents thus do no more than withdraw a basic idea (acquiring,

24 transferring, and publishing data) from the public domain without disclosing any inventive

25 application of that idea.

26    The Supreme Court, the Federal Circuit, and several decisions within this District have

27 made clear that claims like these are invalid under 35 U.S.C. § 101.  The Court should grant

28 Defendants' motion and dismiss these lawsuits.

## II.    THE ASSERTED CELLSPIN PATENTS.

Cellspin has filed more than a dozen lawsuits alleging infringement of several patents in a related family.  *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc.*, Case No. 4:17-cv-05928, Dkt. No. 20 (Cellspin's Notice of Procedural Posture of Related Cases).  Cellspin alleges that defendants Nike, Fitbit, Moov, Fossil, Misfit, TomTom, Adidas America, Inc. ("Adidas"), Under Armour, Inc. ("Under Armour"), Garmin International Inc. and Garmin USA Inc. (together, "Garmin"), and Nikon Americas, Inc. and Nikon Inc. (together, "Nikon") each infringe the following three patents:  U.S. Patent No. 8,738,794 ("the '794 patent"); U.S. Patent No. 8,892,752 ("the '752 patent"); and U.S. Patent No. 9,749,847 ("the '847 patent").[1]  Cellspin also alleges that defendants Garmin, Nikon, TomTom, JK Imaging, Canon, GoPro, and Panasonic each infringe U.S. Patent No. 9,258,698 ("the '698 patent").[2]  Cellspin asserts claims 1-4, 7, and 9 from the '794 patent, claims 1, 2, 4, 5, and 12-14 from the '752 patent, claims 1-3 from the '847 patent, and claims 1, 3-5, 7-8, 10-13, 15-20 from the '698 patent.

Each of the four Asserted Patents shares the same title ("Automatic multimedia upload for publishing data and multimedia content") and the same specification.[3]  *See* '794 patent; '752 patent; '847 patent, '698 patent[4].  While the claims in each of the Asserted Patents differ in some minor respects, each of the claims relates generally to a "Bluetooth enabled data capture device" or "digital camera device" having software, that transmits data to a "Bluetooth enabled mobile

---

[1] *See Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-cv-05928, Dkt. No. 1; *Cellspin Soft, Inc. v. Moov Inc. d/b/a Moov Fitness, Inc.*, No 4:17-cv-05929, Dkt. No. 1; *Cellspin Soft, Inc. v. Adidas America, Inc.*, No. 4:17-cv-05930, Dkt. No. 1; *Cellspin Soft, Inc. v. Nike, Inc.*, No. 4:17-cv-05931, Dkt. No. 1; *Cellspin Soft, Inc. v. Under Armour, Inc.*, No. 4:17-cv-05932, Dkt. No. 1; *Cellspin Soft, Inc. v. Fossil Group, Inc.*, No. 4:17-cv-05933, Dkt. No. 1; *Cellspin Soft, Inc. v. Garmin International Inc.*, No. 4:17-cv-05934, Dkt No. 1; *Cellspin Soft, Inc. v. Nikon Americas, Inc.*, No. 4:17-cv-05936, Dkt. No. 1; *Cellspin Soft, Inc. v. TomTom, Inc.*, No. 4:17-cv-05937, Dkt. No. 1.
[2] *Cellspin Soft, Inc. v. Garmin International.*, No. 4:17-cv-05934, Dkt. No. 1; *Cellspin Soft, Inc. v. Nikon Americas, Inc.*, No. 4:17-cv-05936, Dkt. No. 1; *Cellspin Soft, Inc. v. TomTom, Inc.*, No. 4:17-cv-05937, Dkt. No. 1; *Cellspin Soft, Inc. v. JK Imaging Ltd.*, No. 4:17-cv-06881, Dkt. No. 1; *Cellspin Soft, Inc. v. Canon USA, Inc.*, No. 4:17-cv-05938, Dkt. No. 1; *Cellspin Soft, Inc. v. GoPro, Inc.*, No. 4:17-cv-05939, Dkt. No. 1; *Cellspin Soft, Inc. v. Panasonic Corporation of North America.*, No. 4:17-cv-05941, Dkt. No. 1.
[3] For ease of reference, citations to the Asserted Patent specifications in this Motion will cite to the specification of the '794 patent.
[4] The '794 patent, '752 patent,'847 patent, and '698 patent are attached as Exhibits 1, 2, 3, and 4, respectively, to the Declaration of Richard T. Mulloy filed herewith.

1   device" or "cellular phone" also having software, which then transmits the captured data to one or

2   more websites for publication.  *See, e.g.*, '794 patent at 11:48-12:39 (claim 1); '752 patent at

3   11:48-12:37 (claim 1); '847 patent at 12:12-13:3 (claim 1); '698 patent at 11:54-12:26 (claim 1).

4   The Asserted Patents state that "this invention relates to pairing a digital capture device in

5   conjunction with a mobile device for automatically publishing data and multi-media content on

6   one or more websites simultaneously."  *See* '794 patent at 1:33-36.  Figure 5 (below) shows "a

7   user utilizing a digital camera in conjunction with a Bluetooth enabled mobile device for

8   publishing data and multimedia content on one or more websites automatically or with minimal

9   user intervention."  *Id.* at 3:20-24.

10

11   

12

13

14

15

16

17

18      The "Background" section of the Asserted Patents describes the purported need for the

19   methods and systems claimed by the patents.  *See* '794 patent at 1:32-54.  According to the

20   Asserted Patents, in order to publish data to the internet, a typical user would capture data using a

21   digital device, store the data in memory located on the digital device, and then transfer the data to

22   a computer by employing an off-line method such as using a USB or memory stick plugged into a

23   computer.  *Id.* at 1:39-45.  The user would then "manually upload the [data] onto a website,"

24   which takes time and is "inconvenient" for the user.  *Id.* at 1:45-47.  Thus, the Asserted Patents

25   state that there was a need for a method or system for transferring and publishing the data

26   captured by the digital device "automatically or with minimal user intervention."  *Id.* at 1:53-54.

27   In short, as the patent titles suggest, the purported advance of the Asserted Patents is simply

28   automating the process of uploading data to one or more websites.

The Asserted Patents describe a real-life example of how the alleged invention could be used.  In this example, an investigative reporter (Jane) in New York City spends each day "mov[ing] around the city chasing leads, interviewing people, videotaping her stories, taking pictures, and tracking down her next big story."  *See* '794 patent at 9:15-19.  While working on her story, she may "need to upload her videos and pictures and send it immediately to the associate writer."  *Id.* at 9:19-21.  The claimed methods and systems of the Asserted Patents "enable[] Jane to automatically upload pictures and videos taken using her digital camera or video camera onto a mobile device 202 and publish the pictures, videos, etc. from her mobile device 202 to the internet 501 with one click or touch of a button."  *Id.*  at 9:21-26.  Thus, when she is collaborating with an associate, "they may see each other's progress in real time."  *Id.* at 9:30-32. Because "sharing information with the associate over electronic mails (emails) may be inconvenient, Jane records her progress on the story in the voice format and publishes.  The associate may access the information from Jane's blog site, thereby saving considerable time." *Id.* at 9:30-36.

The Asserted Patents acknowledge that transferring data between a data capture device and a mobile device is nothing new.  For example, the specification acknowledges that Bluetooth was already used in the prior art to "connect[] and exchang[e] information between devices, for example, mobile phones, laptops, personal computers (PCs), printers, digital cameras, etc."  '794 patent at 3:49-52.  Nor do the Asserted Patents describe anything other than the use of "pervasive" and "ubiquitous" (i.e., generic) devices and components.  For example, the specification states that "the method and system disclosed herein may be implemented in technologies that are pervasive, flexible, and capable enough of accomplishing the desired tasks of the method and system," such as "a ubiquitous mobile phone."  *Id.* at 9:37-46.

Claim 1 of the '794 patent is representative of the claims of the Asserted Patents:

> 1. A ***method for acquiring and transferring data*** from a Bluetooth enabled data capture device to one or more web services via a Bluetooth enabled mobile device, the method comprising:
>
> ***providing a software module*** on the Bluetooth enabled data capture device;
>
> ***providing a software module*** on the Bluetooth enabled mobile device;

*establishing a paired connection* between the Bluetooth enabled data capture device and the Bluetooth enabled mobile device;

*acquiring new data* in the Bluetooth enabled data capture device, wherein new data is data acquired after the paired connection is established;

*detecting and signaling the new data for transfer* to the Bluetooth enabled mobile device, wherein detecting and signaling the new data for transfer comprises:

*determining the existence of new data for transfer*, by the software module on the Bluetooth enabled data capture device; and

*sending a data signal* to the Bluetooth enabled mobile device, corresponding to existence of new data, by the software module on the Bluetooth enabled data capture device automatically, over the established paired Bluetooth connection, wherein the software module on the Bluetooth enabled mobile device listens for the data signal sent from the Bluetooth enabled data capture device, wherein if permitted by the software module on the Bluetooth enabled data capture device, the data signal sent to the Bluetooth enabled mobile device comprises a data signal and one or more portions of the new data;

*transferring the new data* from the Bluetooth enabled data capture device to the Bluetooth enabled mobile device automatically over the paired Bluetooth connection by the software module on the Bluetooth enabled data capture device;

*receiving*, at the Bluetooth enabled mobile device, *the new data* from the Bluetooth enabled data capture device;

*applying*, using the software module on the Bluetooth enabled mobile device, *a user identifier to the new data* for each destination web service, wherein each user identifier uniquely identifies a particular user of the web service;

*transferring the new data* received by the Bluetooth enabled mobile device along with a user identifier to the one or more web services, using the software module on the Bluetooth enabled mobile device;

*receiving*, at the one or more web services, *the new data* and user identifier from the Bluetooth enabled mobile device, wherein the one or more web services receive the transferred new data corresponding to a user identifier; and

*making available*, at the one or more web services, *the new data* received from the Bluetooth enabled mobile device for public or private consumption over the internet, wherein one or more portions of the new data correspond to a particular user identifier.

'794 patent at 11:48-12:39 (emphasis added).

Claim 1 of the '794 patent ultimately boils down to the acquisition (*e.g.*, "acquiring", "detecting," "determining") and transfer (*e.g.*, "sending", "receiving", "transferring") of data by generic devices, and publishing that data to one or more websites. *See id.* The remaining claims are directed to the same concepts. For example, the asserted independent claims of the '752 patent recite a similar method using a "secured" Bluetooth connection with an encryption step

and some other minor differences from claim 1 of the '794 patent.  *See* '752 patent at 11:48-12:37.  Likewise, the asserted system claims of the '847 perform substantially the same data acquisition and transfer steps as in the other patents, but add the use of a generic "Bluetooth enabled cellular phone," "first processor," and "mobile application."  *See* '847 patent at 12:12-13:3.  The asserted claims of the '698 patent are directed to the same data acquisition, transfer, and publishing concepts, but include some minor differences, such as claiming a "digital camera device" instead of the "data capture device" in the other patents, along with a more general "wireless connection" instead of Bluetooth.  *See* '698 patent 11:54-12:26.  The dependent claims of the Asserted Patents add other insignificant details such as specifying the location of the Bluetooth technology and the type of data collected, among others.[5]  In short, despite some nominal differences, the claims of the Asserted Patents are all directed to substantially similar methods and systems for acquiring, transferring and publishing data.

## III.   RELEVANT LEGAL STANDARDS.

### A.   Whether A Patent Is Directed To Patentable Subject Matter Can Be Decided On A Motion To Dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In determining whether the plaintiff has stated a claim upon which relief can be granted, the plaintiff's factual allegations are accepted as true.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However,

---

[5] The asserted dependent claims relate to basic concepts such as: (a) the type of user identifier or user information (claim 2 of the '794 patent; claim 2 of the '847 patent; claims 3 and 15 of the '698 patent); (b) the location of the Bluetooth hardware (claim 4 of the '794 patent; claim 2 of the '752 patent); (c) the content or type of data or data signal, including whether the data includes a time stamp (claim 7 of the '794 patent; claims 4 and 13 of the '752 patent; claim 3 of the '847 patent; claims 4, 7 and 16 of the '698 patent); (d) the timing of the data transfer (claim 3 of the '794 patent); and (e) whether the transferred data or event notification are associated with new data (claim 9 of the '794 patent; claims 5 and 14 of the '752 patent).  *See* '794 patent at 12:39-50; 13:48-50; 13:56-58; '752 patent at 12:38-40; 12:44-49; 14:36-42; '847 patent at 13:4-10; 698 patent at 12:38-44; 13:38-40; 15:35-16:5).  All of the claims of the Asserted Patents are invalid under Section 101 for the same reasons.

DLA PIPER LLP (US)
SAN DIEGO
WEST\280006662.3

1  the Court is not required to accept as true "allegations that are merely conclusory, unwarranted

2  deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

3  1055 (9th Cir. 2008).

4         The Federal Circuit has "repeatedly recognized that in many cases it is possible and

5  proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic*

6  *Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *Cleveland Clinic Found. v.*

7  *True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("[W]e have repeatedly

8  affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant

9  discovery has commenced."); *see also Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of*

10  *Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("There is no requirement that claims construction

11  be completed before examining patentability."). Indeed, several judges in this District have

12  granted motions to dismiss on the ground that one or more asserted patents are invalid under

13  Section 101. *See OpenTV, Inc. v. Apple Inc.*, No. 5:15-cv-02008, 2016 WL 344845, at *10 (N.D.

14  Cal. Jan. 28, 2016) (granting motion to dismiss for invalidity under 35 U.S.C. § 101); *TS Patents*

15  *LLC v. Yahoo! Inc.*, No. 17-cv-01721, 2017 WL 3838477, at *26 (N.D. Cal. Sept. 1, 2017)

16  (same); *Purepredictive, Inc. v. H20.AI, Inc.*, No. 17-cv-03049, 2017 WL 3721480, at *7 (N.D.

17  Cal. Aug. 29, 2017) (same).

18        **B.**     **Abstract Ideas Are Not Patentable Under 35 U.S.C. § 101.**

19         Under Section 101 of the Patent Act, "[w]hoever invents or discovers any new and useful

20  process, machine, or composition of matter, or any new and useful improvement thereof, may

21  obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

22  However, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable" under

23  Section 101. *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116

24  (2013). This is because "such discoveries are manifestations of . . . nature, free to all men and

25  reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct.

26  1289, 1293 (2012).

27         In *Alice Corp. v. CLS Bank*, the Supreme Court articulated a two-step test for identifying

28  claims directed to unpatentable subject matter under Section 101. *Alice Corp. Pty. Ltd. v. CLS*

1   *Bank Int'l*, 134 S. Ct. 2347 (2014).  First, the court must "determine whether the claims at issue

2   are directed to a patent-ineligible concept" such as an abstract idea, law of nature, or natural

3   phenomenon.  *Id.* at 2355.  Second, if the claims are directed to a patent-ineligible concept, the

4   Court must "consider the elements of each claim both individually and as an ordered combination

5   to determine whether the additional elements transform the nature of the claim into a patent-

6   eligible application."  *Id.* (internal quotations omitted).

7        The first step of the *Alice* inquiry is a "filter" on the claims, determining whether "their

8   character as a whole is directed to excluded subject matter."  *Internet Patents Corp. v. Active*

9   *Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).  In other words, courts look at the "focus" or

10  "basic thrust" of the claims.  *See Electric Power Group LLC v. Alston S.A.*, 830 F.3d 1350, 1353

11  (Fed. Cir. 2016).  When evaluating computer-related claims, courts look to whether the claims

12  "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, or whether

13  "computers are invoked merely as a tool" to implement an abstract process.  *Enfish, LLC v.*

14  *Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).  Ideas that could "be performed by

15  humans without a computer" are abstract and not eligible for patent protection.  *Mortg. Grader,*

16  *Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016).  Moreover,

17  information itself is intangible.  *See Electric Power*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

18  Accordingly, claims are abstract where they are directed to actions such as collecting data,

19  analyzing data, and/or publishing the results of that analysis.  *Id.*; *see also TS Patents*, 2017 WL

20  3838477, at *7.

21       On this basis, courts have found the following claims directed to various acts of

22  information or data acquisition and transfer (including, among others, acquiring, analyzing,

23  sending, receiving, and publishing data) to be abstract ideas under the *Alice* test:

24      •  Systems and methods for performing real-time monitoring of an electric power grid

25        by collecting data from multiple data sources, analyzing the data, and displaying the

26        results, *Electric Power Group*, 830 F.3d at 1351;

27  /////

28  /////

- A device used for recording a digital image, storing the digital image, and transferring the digital image to a server for further processing, *In re TLI Commc'ns*, 823 F.3d 607, 609 (Fed. Cir. 2016);

- A method claiming the functional results of converting, routing, controlling, monitoring, and accumulating records, *Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017);

- Claims directed to collecting and analyzing information to detect misuse, and notifying a user when misuse is detected, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093-95 (Fed. Cir. 2016);

- Claims directed to transmitting information about a mail object over a network using a personalized marking, *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 908 (Fed. Cir. 2017);

- Claims for collecting data, recognizing certain data within the collected set, and storing that data, *Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); and

- Methods for validating entry into a transit system involving acquiring identification data from a bankcard, using the data to verify if the bankcard is valid, and denying access to a transit system if the bankcard is invalid, *Smart Sys. Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364, 1371-72 (Fed. Cir. 2017).

Step two of the *Alice* inquiry is a "search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355. The inventive concept must be "significantly more than the abstract idea itself," *id.*, "must be more than well-understood, routine, conventional activity," *Mayo*, 132 S. Ct. at 1298, and "cannot simply be an instruction to implement or apply the abstract idea on a computer," *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). *See also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (no inventive concept where claim "simply recite[d] the use of generic features of cellular telephones,

1  such as a storage medium and a graphical user interface, as well as routine functions, such as

2  transmitting and receiving signals, to implement the underlying idea"). Moreover, claiming the

3  "improved speed of efficiency inherent with applying the abstract idea on a computer" does not

4  transform an abstract idea into patent-eligible subject matter under *Alice*. *See Intellectual*

5  *Ventures I LLC v. Capital One Bank (USA)* ("*Capital One Bank*"), 792 F.3d 1363, 1367 (Fed.

6  Cir. 2015); *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, No. 2016-1913, --- F. App'x ----, 2017 WL

7  3188451, at *3 (Fed. Cir. July 27, 2017) (adding computer functionality and the use of the

8  Internet to "increase the speed and efficiency of an abstract process" is not enough to show an

9  inventive concept).

10  **IV.    THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 101.**

11       Each of the claims of the Asserted Patents is invalid because none of the claims are

12  directed to patentable subject matter. 35 U.S.C. § 101. Instead, the claims of the Asserted

13  Patents are all directed to abstract ideas such as acquiring, transferring and/or publishing data.

14  Moreover, the claims all use generic devices and components such as "data capture devices,"

15  "mobile devices," "cellular phones," and "processors" to accomplish those tasks. In these

16  circumstances, there is no inventive concept sufficient to transform the abstract ideas of the

17  claims into patentable subject matter, and each of the claims is invalid under Section 101.[6]

18  /////

19

20  [6] All of the asserted patent claims and each of the limitations contained therein are invalid
    because they: (1) claim patent-ineligible abstract ideas; and (2) do not contain any inventive
21  concept to transform the claimed abstract ideas into patent-eligible subject matter. Although a
    majority of the discussion in this Motion is directed to claim 1 of the '794 patent, the remaining
22  claims of the Asserted Patents suffer the same defects and are invalid for the same reasons.
    Where, as here, all of the asserted patent claims are "substantially similar and linked to the same
23  abstract idea" and a particular claim is representative of the others, the Court need not "expressly
    address each asserted claim" in determining whether the claims are ineligible under Section 101.
24  *TS Patents* 2017 WL 3838477, at *10 (citing *Content Extraction*, 776 F.3d at 1348). Here, the
    four related Asserted Patents all claim the same abstract ideas, and thus each of the claims of the
25  Asserted Patents are invalid under Section 101 for the same reasons. *See, e.g., Bilski v. Kappos*,
    561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field of use or adding token post-
26  solution components d[oes] not make the concept patentable."). Primarily, the claims differ
    because they vary the generality of the devices to be used (*e.g.*, "digital camera device" instead of
27  "data capture device", "cellular phone" with a "graphical user interface" instead of "mobile
    device," or "Bluetooth" instead of "short-range wireless communication."). At best, however,
28  this just "confine[s] the abstract idea to a particular technological environment" which "does not
    render the claims any less abstract." *DirecTV, LLC*, 838 F.3d at 1258-59.

DLA PIPER LLP (US)
SAN DIEGO

WEST\280006662.3

DEFENDANTS' MOTION TO DISMISS
17-CV-05931-YGR

1    A.    *Alice* **Step One: The Asserted Patents Claim the Abstract Idea of Acquiring**

2    **and Transferring Data For Publication.**

3        Under step one of the *Alice* test, courts examine the "focus of the claims" and "their

4    character as a whole" to determine if they are directed to patent-ineligible subject matter.  *Electric*

5    *Power*, 830 F.3d at 1353.  Here, the "focus of the claims" is directed to acquiring and transferring

6    data for publication on a website.  Thus, the Asserted Patents are directed to precisely the type of

7    abstract ideas that the Federal Circuit has found unpatentable—collecting, transferring, and

8    publishing data or information:

9            Information as such is an intangible.  Accordingly, we have treated
             collecting information, including when limited to particular content
10           (which does not change its character as information), as within the
             realm of abstract ideas.  In a similar vein, we have treated analyzing
11           information by steps people go through in their minds, or by
             mathematical algorithms, without more, as essentially mental
12           processes within the abstract-idea category. And we have
             recognized that merely presenting the results of abstract processes
13           of collecting and analyzing information, without more (such as
             identifying a particular tool for presentation), is abstract as an
14           ancillary part of such collection and analysis.  Here, the claims are
             clearly focused on the combination of those abstract-idea processes.
15           The advance they purport to make is a process of gathering and
             analyzing information of a specified content, then displaying the
16           results, and not any particular assertedly inventive technology for
             performing those functions. They are therefore directed to an
17           abstract idea.

18    *Id.* at 1353-54 (internal citations omitted).  In *Electric Power*, the claims were directed to a

19    "method of detecting events on an interconnected electric power grid in real time over a wide area

20    and automatically analyzing the events" by (1) "receiving a plurality of data streams," (2)

21    "detecting and analyzing events in real-time from the plurality of data streams," and (3)

22    "displaying the event analysis results." *Electric Power*, 830 F.3d at 1351-52.  The Federal Circuit

23    concluded that the claims were "clearly focused on the combination of . . . abstract-idea

24    processes" such as "collecting information" and "analyzing information," and then "presenting

25    the results of abstract processes of collecting and analyzing information." *Id.* at 1353–54.

26        In *In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016), the Federal

27    Circuit invalidated a patent with claims very similar to those in the Asserted Patents.  In *TLI*, the

28    claims were directed to a method of recording digital images with a smartphone camera, storing

-12-

1    the data on the smartphone, and then sending the images to a server for further processing.  *See*

2    *id.* at 609-10.  The Federal Circuit explained that "the problem facing the inventor was not how to

3    combine a camera with a cellular telephone, how to transmit images via a cellular network, . . .

4    [n]or was the problem related to the structure of the server that stores the . . . digital images." *Id.*

5    at 612.  The court thus found that the claims were directed to an abstract idea, and invalid under

6    Section 101.  In doing so, the court noted that the claims "are not directed to a specific

7    improvement to computer functionality" but instead "they are directed to the use of conventional

8    or generic technology in a nascent but well-known environment, without any claim that the

9    invention reflects an inventive solution to any problem by combining the two." *Id*.

10        As in *Electric Power* and *In re TLI Commc'ns*, the claims of the Asserted Patents are

11   directed to abstract ideas that are not eligible for patent protection.  Claim 1 of the '794 patent is

12   abstract because it simply recites "acquiring new data," "transferring the new data" between

13   devices, "receiving the new data at one or more web services," and "making available, at one or

14   more web services, the new data received."  *See* '794 patent at 11:48–12:38.  The remaining

15   claims of the Asserted Patents all suffer from the same defect.  Indeed, the Federal Circuit has

16   repeatedly found that similar data collection, transfer and/or publication claims are abstract.  *See*

17   *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017)

18   (patent claim "directed to . . . collecting, displaying, and manipulating data" was abstract);

19   *EasyWeb Innovations, LLC v. Twitter, Inc.,* 689 F. App'x 969, 971 (Fed. Cir. 2017) ("As we have

20   explained in a number of cases, claims involving data collection, analysis, and publication are

21   directed to an abstract idea.");  *W. View Research, LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed.

22   Cir. 2017) ("Collecting information, analyzing it, and displaying certain results of the collection

23   and analysis are a familiar class of claims 'directed to' a patent-ineligible concept.").  Describing

24   these abstract ideas with "technical-sounding verbosity," as the Asserted Patents attempt to do,

25   does not change the conclusion that the claims as a whole are directed to abstract ideas not

26   eligible for patent protection.  *See University of Florida Research Foundation, Inc. v. General*

27   *Electric Co.*, No. 1:17-cv-171, 2017 WL 5502940, at *6 (N.D. Fla. Nov. 16, 2017).

28   /////

1   These abstract concepts of collecting, transferring, and publishing data are "undisputedly

2   well-known" and "humans have always performed these functions." *Content Extraction*, 776

3   F.3d at 1347; *see also BSG Tech LLC v. AutoZone, Inc.,* No. 2:16-CV-529, 2017 WL 2609066, at

4   *4 (E.D. Tex. Mar. 30, 2017) ("Because the claim can be performed by the human mind or by

5   using pen and paper, the claim is directed to an abstract idea.").  Courts have made clear that

6   functions that "could all be performed by humans without a computer," such as those in the

7   Asserted Patents, are abstract under the *Alice* test.  *See, e.g., Mortg. Grader,* 811 F.3d at 1324.

8   Using the functionality of the accused fitness tracking products as an example, a person could

9   manually track his or her activity or fitness data (such as how far the person ran), record that data

10  on a piece of paper, and transfer or publish those results to others.  Indeed, the specifications of

11  the Asserted Patents emphasize that the benefit of the purported invention is avoiding the

12  inconvenience of manually loading and transferring data to a website for publication.  *See* '794

13  patent at 1:37-54.  But the fact that a computer can perform any of the data collection, transfer, or

14  publishing tasks faster or more conveniently than a human does not avoid the conclusion that the

15  claims are directed to patent-ineligible subject matter.  *See, e.g., OIP Techs., Inc. v. Amazon.com,*

16  *Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("At best, the claims describe the automation of the

17  fundamental economic concept of offer-based price optimization through the use of generic-

18  computer functions. . . . But relying on a computer to perform routine tasks more quickly or more

19  accurately is insufficient to render a claim patent eligible.").  In short, the claims "merely

20  implement an old practice in an allegedly new environment," which underscores that the patent

21  claims are directed to an abstract idea.  *FairWarning IP*, 839 F.3d at 1094.

22  Alternatively, claims are not directed to abstract ideas under step one of *Alice* where they

23  recite "specific . . . improvement[s] in computer capabilities."  *Enfish,* 822 F.3d at 1336.  For

24  example, in *Enfish*, the Federal Circuit held the claims were drawn to a "specific improvement to

25  the way computers operate" and patent eligible because the claimed invention resulted in a

26  database with "increased flexibility, faster search times, and smaller memory requirements" than

27  databases in the prior art.  *Id.* at 1337; *see also Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d

28  1253, 1259 (Fed. Cir. 2017) (finding claims valid under *Alice* step one that were "directed to an

1    improved computer memory system" by "permit[ting] different types of processors to be

2    installed . . . without significantly compromising their individual performance.").

3         The Asserted Patents do not disclose any special or improved way of acquiring or

4    transmitting data, and no specific devices are required to perform those tasks.  To the contrary,

5    the patents teach that "the method and system disclosed herein may be implemented in

6    technologies that are pervasive [and] flexible" through generic hardware such as a "ubiquitous

7    mobile phone," "fairly widespread" personal digital assistants, and "general purpose computers

8    and computing devices." '794 patent at 9:37-48; 10:10-13.  In other words, the focus of the

9    Asserted Patents is not "on [a] specific asserted improvement in computer capabilities" but

10   instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely

11   as a tool." *Enfish*, 822 F.3d at 1339.  In fact, the selection of devices is so inconsequential that

12   "[a]ny number and type of machines may be in communication with the computer." '794 patent

13   at 11:27-28.  The addition of Bluetooth or similar wireless technology likewise cannot change the

14   conclusion that the claims are abstract because the Asserted Patents acknowledge that Bluetooth

15   was a well-known way to "connect[] and exchang[e] information between devices, for example,

16   mobile phones, laptops, personal computers (PCs), printers, digital cameras, etc." *Id.* at 3:49–53.

17   The specification thus confirms that the Asserted Patent claims are directed to an abstract idea

18   under the first step of the *Alice* test.  *DIRECTV*, 838 F.3d at 1258  (finding claims directed to

19   establishing communication between two points a "broad and familiar concept concerning

20   information distribution that is untethered to any specific or concrete way of implementing it").

21        **B.**    ***Alice* Step Two: There is No Inventive Concept That Transforms The**

22   **Claimed Abstract Ideas Into Patent-Eligible Subject Matter.**

23        Because the claims of the Asserted Patents are directed to a patent-ineligible abstract idea,

24   the second step of the *Alice* test requires the Court to decide "whether the remaining elements,

25   either in isolation or in combination with the non-patent-ineligible elements, are sufficient to

26   transform the nature of the claim into a patent-eligible application." *Capital One Bank*, 792 F.3d

27   at 1366-67.  When looking at computer-related technology such as that in the Asserted Patents,

28   courts determine whether there are "specific improvements in the recited technology that go

-15-

1    beyond 'well-understood, routine, conventional activities' and render the invention patent-

2    eligible." *BASCOM*, 827 F.3d at 1348.

3         Whether the elements of the claims are viewed in isolation or in combination with one

4    another, there is no inventive concept as required by *Alice,* and thus nothing that transforms the

5    abstract idea into patent-eligible subject matter.  The claims instead recite "generic computer

6    parts using conventional computer activity."  *Content Aggregation Solutions LLC v. Blu Prods.,*

7    *Inc.*, No. 16-cv-527, 2016 WL 6995490, at *5 (S.D. Cal. Nov. 29, 2016).  But the Federal Circuit

8    has made clear that claiming generic hardware and software—such as the software modules and

9    devices claimed in the Asserted Patents—cannot make an otherwise abstract idea patent-eligible.

10   *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer

11   receives and sends the information over a network—with no further specification—is not even

12   arguably inventive."); *DIRECTV*, 838 F.3d at 1262 (finding no inventive concept where the claim

13   "simply recite[d] the use of generic features of cellular telephones, such as a storage medium and

14   a graphical user interface, as well as routine functions, such as transmitting and receiving signals,

15   to implement the underlying idea"); *Elec. Power Grp.*, 830 F.3d at 1355-56 ("We have repeatedly

16   held that such invocations of computers and networks that are not even arguably inventive are

17   insufficient to past the test of an inventive concept in the application of an abstract idea"); *In re*

18   *TLI Commc'ns LLC Patent Litigation*, 823 F.3d at 612.

19        Here, the Asserted Patent claims are directed to the general functions of acquiring,

20   transferring, and publishing data using generic devices and software.  All of the recited

21   components and technology in the claims were well-known in the art, and the specification does

22   not even attempt to describe them as new.  For example, the claims of the '794 patent refer to

23   "software modules" that are used to detect, receive, and transfer data from a "data capture device"

24   and a "mobile device" to a "web service."  '794 patent at 11:48-12:39.  The claims of the

25   remaining Asserted Patents use similar terms.  *See, e.g.*, '752 patent at 11:48-12:38 (claiming a

26   "data capture device," a "mobile device, an "internet service," and adding a "cryptographic

27   encryption key"); '847 patent at 12:12-13:3 (claiming a system comprising a "memory device," a

28   "first processor," a "data capture circuitry," and a "mobile application"); '698 patent at 11:54-

-16-

1    12:26 (claiming a "digital camera device," a "cellular phone," a "non-volatile memory," and a

2    "media publishing website").  But these are all nothing more than "generic and well-known

3    components."  *OpenTV*, 2016 WL 344845, at *7; *see also Alice*, 134 S. Ct. 2360 ("data

4    processing system" and "data storage unit" components were purely functional and generic

5    components that were not inventive under Section 101).

6          An inventive concept sufficient to confer patent eligibility is present where "components

7    operate in an unconventional manner to achieve an improvement in computer functionality."

8    *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016).  The

9    claims at issue in *Amdocs* contained an inventive concept because they disclosed a unique

10   architecture for a network, which "allow[ed] data to reside close to the information sources,

11   thereby reducing congestion in network bottlenecks, while still allowing data to be accessible

12   from a central location."  *Id.* at 1291–92.  "[T]his distributed enhancement was a critical

13   advancement over the prior art" that "stored information in one location, which made it very

14   difficult to keep up with massive record flows from the network devices and which required huge

15   databases."  *Id.* at 1300, 1292.  Thus, the claims included an inventive concept and were

16   patentable because they provided "an unconventional technological solution (enhancing data in a

17   distributed fashion) to a technological problem (massive record flows which previously required

18   massive databases)."  *Id.* at 1300.

19         In contrast, the patent specifications here do not describe any particular improvements to

20   the generic devices from the claims that would provide the requisite inventive concept.  To the

21   contrary, the specification confirms there are several known options for each of the generic

22   devices referenced in the claims, and several known methods for using those devices to send and

23   receive data, including via Bluetooth.  *See, e.g.*, '794 patent at 2:16-18 (types of digital capture

24   devices); *id.* at 3:43-46 (examples of Bluetooth communication devices); *id.* at 4:38-44 (a variety

25   of ways the data can be transferred); *id.* at 9:40-46 (alternatives to Bluetooth); *id.* at 9:46-54

26   (mobile device can be a "ubiquitous mobile phone," a PDA, or a device with or without telephony

27   support); 10:10-13 (methods and algorithms described in patent may be implemented in a

28   computer readable medium programmed for "general purpose computers and computing

devices"); 10:25-28 (processor means "any one or more microprocessors, Central Processing Unit (CPU) devices, computing devices, microcontrollers, digital signal processors or like devices"). Thus, the Asserted Patents are clear that the claim elements "merely provide a generic environment in which to carry out" the abstract ideas of collecting, transferring, and publishing data. *TLI*, 823 F.3d at 611. Whether viewed in isolation or in combination with one another, none of the claim elements supply the requisite inventive concept that can transform the abstract idea of the claims into patentable subject matter. Simply put, the abstract concept claimed in the Asserted Patents "does not become nonabstract" merely because the claims are set in a "technological environment" consisting of conventional components and the use of standard technology. *Intellectual Ventures I LLC v. Symantec Corp.* ("*IV-Symantec*"), 838 F.3d 1307, 1319 (Fed. Cir. 2016); *see also Alice*, 134 S. Ct. at 2358.

Moreover, any purported improvements in speed or efficiency inherent with applying the abstract idea automatically or on a computer are not sufficient to establish an inventive concept that transforms the abstract idea into patentable subject matter. *Capital One Bank*, 792 F.3d at 1367; *see also OIP Techs.*, 788 F.3d at 1363 (claims directed to "automat[ing] or otherwise mak[ing] more efficient traditional price-optimization methods" were abstract); *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1267 (Fed. Cir. 2012) ("While running a particular process on a computer undeniably improves efficiency and accuracy, cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within section 101."). Thus, any suggestion that the Asserted Patents pass muster under *Alice* because they are purportedly directed to "automatic" or "real-time" data acquisition, transfer or publication is without merit. *See, e.g.*, '794 patent at 1:34-47; 9:15-36.

Nor can there be any argument that the purported novelty of the combination or sequence of steps in the claims of the Asserted Patents resolves the deficiencies under Section 101. *Synopsis, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("a claim for a *new* abstract idea is still an abstract idea") (emphasis in original); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("We do not agree with Ultramercial that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into

1   something concrete"); *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 260 (E.D. Pa.

2   2016) ("A novel combination of steps alone cannot alone render an abstract idea patentable."),

3   *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017).  This is because a novel sequence of steps still results in

4   only a "grouping of conventional steps and extant technology."  *Smart Sys Innovations, LLC v.*

5   *Chicago Transit Authority.*, No. 14-cv 08053, 2015 WL 4184486, at *6 (N.D. Ill. July 10, 2015);

6   *see also In re: Bill of Lading Transmission & Processing Sys. Patent Litig.,* No. 1:09-MD-2050,

7   2016 WL 4505767, at *3 (S.D. Ohio Aug. 29, 2016) ("But there is nothing 'inventive' about

8   shifting the timing of the data collection process – indeed, it seems a matter of common sense.

9   This is all the more true when, as already stated, the execution of the method depends entirely on

10  the conventional operation of commercially-available technology.").

11      In short, there is nothing in the claims—whether the elements are viewed in isolation or in

12  combination with one another—that is "significantly more than the abstract idea itself" and

13  transforms the claimed abstract idea into patent-eligible subject matter.  *BASCOM*, 827 F.3d at

14  1349.  Because the patent claims are directed to an abstract concept under step one of *Alice*, and

15  because there is no inventive concept that transforms the claims into a patent-eligible application

16  under step two of the *Alice* inquiry, the claims are invalid under Section 101.

17  **V.    CONCLUSION.**

18      For the foregoing reasons, Defendants respectfully request that the Court grant their

19  motion to dismiss because the asserted claims are invalid under 35 U.S.C. § 101 for lack of

20  patentable subject matter.

21  Dated:  January 16, 2018

22                              DLA PIPER LLP (US)

23                              By */s/ Richard T. Mulloy*
24                                  RICHARD T. MULLOY
                                    EDWARD H. SIKORSKI
25                                  AMY WALTERS
                                    Attorneys for Defendant
26                                  NIKE, INC.

27

28

DLA PIPER LLP (US)
SAN DIEGO

WEST\280006662.3                                    DEFENDANTS' MOTION TO DISMISS
                                                    17-CV-05931-YGR

1

2   Dated:  January 16, 2018

3                                                    GOODWIN PROCTER LLP

4                                                    By /s/ Shane Brun
                                                     _____
                                                         SHANE BRUN
5                                                        sbrun@goodwinlaw.com
                                                         RACHEL M. WALSH
6                                                        rwalsh@goodwinlaw.com
                                                         Three Embarcadero Center, 28th Floor
7                                                        San Francisco, CA  94111
                                                         Tel. 415.733.6000
8                                                        Fax: 415.677.9041

9                                                        NEEL CHATTERJEE
                                                         nchatterjee@goodwinlaw.com
10                                                       135 Commonwealth Drive
                                                         Menlo Park, CA  94025
11                                                       Tel. 650.752.3100
                                                         Fax: 650.853.1038
12
                                                         Attorneys for Defendant
13                                                       FITBIT, INC.

14  Dated:  January 16, 2018
                                                     GOODWIN PROCTER LLP
15
                                                     By /s/ Shane Brun
16                                                   _____
                                                         SHANE BRUN
17                                                       sbrun@goodwinlaw.com
                                                         ANJALI MOORTHY
18                                                       amoorthy@goodwinlaw.com
                                                         Three Embarcadero Center, 28th Floor
19                                                       San Francisco, CA  94111
                                                         Tel. 415.733.6000
20                                                       Fax: 415.677.9041
                                                         Attorneys for Defendant
21                                                       MOOV INC. d/b/a MOOV FITNESS INC..

22

23

24

25

26

27

28

1

2    Dated:  January 16, 2018

3                                              FISH & RICHARDSON P.C.

4                                              By */s/ Dalia B. Kothari*
                                                   DALIA B. KOTHARI
5                                                  kothari@fr.com
                                                   500 Arguello Street, CA  94063
6                                                  Tel. 650.839.5070
                                                   Fax: 858.678.5099

7                                                  DAVID B. CONRAD
                                                   conrad@fr.com
8                                                  NEIL J. McNABNAY
                                                   mcnabnay@fr.com
9                                                  RICARDO J. BONILLA
                                                   rbonilla@fr.com
10                                                 THERESA M. DAWSON
                                                   tdawson@fr.com
11                                                 1717 Main Street, Suite 5000
                                                   Dallas, TX  75201
12                                                 Tel.  214.747.5070
                                                   Fax:  214.747.2091

13                                                 Attorneys for Defendant
14                                                 FOSSIL GROUP, INC. and MISFIT INC.

15   Dated:  January 16, 2018

16                                              BAKER & HOSTETLER LLP

17                                              By */s/ Teresa C. Chow*
                                                   TERESA C. CHOW
18                                                 tchow@bakerlaw.com
                                                   11601 Wilshire Boulevard, Suite 1400
19                                                 Los Angeles, CA  90025-0509
                                                   Tel.  310.820.8800
20                                                 Fax:  310.820.8859
                                                   Attorneys for Defendant
21                                                 TOMTOM, INC.

22

23

24

25

26

27

28

1

2   Dated:  January 16, 2018

DUANE MORRIS LLP

3

4   By /s/ Karineh Khachatourian
        KARINEH KHACHATOURIAN
        karinehk@duanemorris.com
5       DANIEL T. McCLOSKEY
        DTMcCloskey@duanemorris.com
6       2475 Hanover Street
        Palo Alto, CA  94304-1194
7       Tel.  650.847.4150
        Fax:  650.847.4151
8       Attorneys for Defendant
        GOPRO, INC.
9

10  Dated:  January 16, 2018

QUINN EMANUEL URQUHART & SULLIVAN, LLP

11

12  By /s/ Ryan S. Goldstein
        RYAN S. GOLDSTEIN
        ryangoldstein@quinnemanuel.com
13      JEFFREY UNG (admitted pro hac vice)
        jeffreyung@quinnemanuel.com
14      865 S. Figueroa Street, 10th Floor
        Los Angeles, CA  90017
15      Tel.  213.443.3000
        Fax:  213.443.3100
16      Attorneys for Defendant
        CANON U.S.A., Inc.
17

18

19

20

21

22

23

24

25

26

27

28

DLA Piper LLP (US)
San Diego

WEST\280006662.3

-22-

DEFENDANTS' MOTION TO DISMISS
17-CV-05931-YGR

1

2    Dated:  January 16, 2018

3                                        ORRICK, HERRINGTON & SUTCLIFFE LLP

4                                        By /s/ T. Vann Pearce, Jr.
                                            STEVEN J. ROUTH
5                                           srouth@orrick.com
                                            STEN JENSEN
6                                           sjensen@orrick.com
                                            T. VANN PEARCE, JR.
7                                           vpearce@orrick.com
                                            Columbia Center
8                                           1152 15th Street, N.W.
                                            Washington, DC  20005-1706
9                                           Tel.  202.339.8400
                                            Fax:  202.339.8500

10                                          JASON YU
                                            jasonyu@orrick.com
11                                          1000 Marsh Road
                                            Menlo Park, CA  94025-1021
12                                          Tel: 650.614.7400
                                            Fax:  650.614.7401

13
                                            Attorneys for Defendant
14                                          PANASONIC CORPORATION OF NORTH
                                            AMERICA
15
     Dated:  January 16, 2018
16                                       KNOBBE, MARTENS, OLSON & BEAR, LLP

17
                                         By /s/ Irfan A. Lateef
18                                          IRFAN A. LATEEF
                                            irfan.lateef@knobbe.com
19                                          2040 Main Street, 14th Floor
                                            Irvine, CA  92614
20                                          Tel.  949.760.0404
                                            Fax: 949.760.9502
21                                          Attorneys for Defendant
                                            JK IMAGING LTD.
22

23

24

25

26

27

28

DLA Piper LLP (US)
San Diego                                        -23-
                                                                DEFENDANTS' MOTION TO DISMISS
WEST\280006662.3                                                17-CV-05931-YGR